UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM, INC., | CASE NO. C17-0804JLR |
| Petitioner, | ORDER |
| v. | |
| AROBO TRADE, INC., | |
| Respondent. | |

## I. INTRODUCTION

Before the court is Petitioner Amazon.com, Inc.'s petition to confirm an arbitration award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* (Pet. (Dkt. # 1).) Respondent Arobo Trade, Inc., failed to respond to the petition. (*See* Dkt.) The court has considered Amazon's petition, the relevant portions of the record, and the applicable law. Considering itself fully advised, the court GRANTS Amazon's petition and CONFIRMS the arbitrator's award.

//

## II. BACKGROUND

Arobo operates an electronic storefront and sells primarily electronic goods through Amazon's platform. (Pet. ¶ 6.) In August 2014, Arobo agreed to be bound by the Amazon Services Business Solutions Agreement ("the Agreement"). (Pet. ¶ 10; Wagner Decl. (Dkt. # 2) ¶ 3, Ex. 1 ("Agreement").) In assenting to the Agreement, Arobo submitted to mandatory, binding arbitration. (Agreement ¶ 18.)

Subsequently, Amazon discovered that Arobo had "engaged in an extensive and concerted effort to mislead Amazon's customers" by posting fake and paid customer reviews for Arobo's products. (Pet. ¶ 20.) Arobo is aware that these abusive reviews violate the policies that apply to Amazon's sellers. (*Id.* ¶ 21.) On April 22, 2016, Amazon warned Arobo to discontinue these abusive practices, but Arobo continued. (*Id.* ¶ 20.) Accordingly, on October 25, 2016, Amazon initiated an arbitration proceeding by filing a demand with the American Arbitration Association. (*Id.* ¶ 22.)

Amazon calculated that between October 25, 2015, and October 25, 2016, Arobo generated total sales of $531,773.24 "on products linked to abusive reviews." (*Id.* ¶ 21.) In arbitration, Amazon sought $531,773.24 in damages under the Lanham Act, 15 U.S.C. § 1117(a); $7,500.00 in attorney's fees under the Lanham Act and Washington's Consumer Protection Act ("CPA"), RCW ch. 19.86; and $14,825.00 in costs under the CPA (Pet. ¶ 24). Amazon also sought an injunction to end Arobo's abusive review practices. (*Id.* ¶ 25.) Arobo failed to respond or appear at the arbitration hearing. (*Id.*)

The Honorable George A. Finkle, the appointed arbitrator (Wagner Decl. ¶ 4, Ex. 2), held the arbitration hearing on April 26 and 27, 2017 (Pet. ¶ 24). After the

hearing, he awarded Amazon the injunctive and monetary relief that Amazon sought. (Wagner Decl. ¶ 5, Ex. 3 ("Award") at 5.) Specifically, he concluded that Amazon proved $531,773.24 in revenue from the abusive reviews and that Arobo failed to prove any associated costs or deductions. (Award at 3-4); *see* 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."). He also concluded that Amazon had proven a CPA violation and awarded $7,500.00 in attorney's fees and $14,825.00 in costs. (Award at 4-5; *see* Wagner Decl. ¶ 6, Ex. 4 (demonstrating $14,825.00 in costs incurred by Amazon)); *see also* RCW 19.86.090 (providing for attorney's fees and costs to a prevailing CPA plaintiff). Finally, Judge Finkle issued the following injunctive relief:

> Arobo Trade, Inc., and its officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Arobo Trade, Inc., are enjoined from a) selling products on any of Amazon's websites; b) opening any Amazon account; c) accessing Amazon's services in any manner whatsoever; and d) assisting, aiding or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs a) - c) of this paragraph.

(Award at 5.) The award has not been subsequently vacated or modified. (Pet. ¶ 14.)

Pursuant to the FAA, Amazon now petitions to reduce Judge Finkle's arbitration award to judgment. *See* 9 U.S.C. § 9. After several failed attempts at serving Arobo's registered agent (Cert. of Serv. (Dkt. # 5) at 5-7), a process server served Arobo with the petition and related filings on May 26, 2017 (*id.* at 4). Arobo failed to respond to Amazon's petition, which is now before the court. (*See generally* Dkt.; Pet.)

//

## III. ANALYSIS

The FAA allows the prevailing party in certain arbitration proceedings to apply to a federal district court to reduce the arbitration award to judgment. 9 U.S.C. § 9. The prevailing party must seek such relief "within one year after the [arbitration] award is made." *Id.* Where the parties' agreement does not specify the appropriate court, "then such application may be made to the United States court in and for the district within which such award was made." *Id.* Upon service of the application to the adverse party, the federal court may assume personal jurisdiction over that party. *Id.* If the adverse party is a nonresident of the district within which the award was made, however, "then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court." *Id.*

Judge Finkle issued the arbitration award in Seattle less than one year before Amazon filed its petition. (*See* Award at 1; Pet. at 1.) Amazon has therefore complied with the FAA's venue and time limitations. *See* 9 U.S.C. § 9. In addition, the award has not been vacated or amended. (Pet. ¶ 14); *see* 9 U.S.C. § 9 (excluding from judicial enforcement arbitrator's awards that are subsequently "vacated, modified, or corrected as prescribed in sections 10 and 11 of this title"); *see also id.* §§ 10-11.) Because Arobo is a nonresident of this district (Pet. ¶ 8), the FAA's final applicable requirement is that notice "shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court," 9 U.S.C. § 9.

"[T]here is scant caselaw interpreting" this service requirement. *Hancor, Inc. v. R & R Eng'g Prods., Inc.*, 381 F. Supp. 2d 12, 15 (D.P.R. 2005). To the extent caselaw

exists, "district courts around the country are applying [the] service requirement inconsistently." *Logan & Kanawha Coal Co. v. Detherage Coal Sales, LLC*, 789 F. Supp. 2d 716, 718 (S.D.W. Va. 2011). Although some district courts have strictly interpreted Section 9 to require service of nonresidents by the United States Marshal, others have found the requirement anachronistic and permitted some flexibility in the method of service. *See id.* at 718-20 (collecting cases); *see also id.* at 722 ("[S]ervice on a nonresident, as authorized by Section 9, is proper and should be effected by the U.S. Marshals Service."). The court therefore ordered Amazon to file supplemental briefing regarding whether service by a process server comports with Section 9's service requirement for a nonresident respondent. (7/26/17 Order (Dkt. # 7).)

The court is persuaded that service by process server comports with Section 9 of the FAA. Section 9 contains three sentences regarding service, the third of which is most directly relevant here: (1) "Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding"; (2) "If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court"; and (3) "If the adverse party shall be a nonresident, then the notice of the application *shall* be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court." 9 U.S.C. § 9 (emphasis added).

//

There are two reasonable ways to read the emphasized "shall" in the third sentence. First, the emphasized "shall" could limit the petitioner's options for service of a nonresident respondent: the petitioner must move the court for service by the United States Marshal, and that service must occur "in like manner as other process of the court." *Id.*; *see, e.g.*, *Logan & Kanawha*, 789 F. Supp. 2d at 722. This interpretation limits the petitioner's discretion. Second, the emphasized "shall" could require action by the court and United States Marshall: the petitioner may move the court for service by the United States Marshal and, when the respondent is a nonresident and the petitioner so moves, the court must order service by the United States Marshal and the United States Marshal must serve the respondent "in like manner as other process of the court." 9 U.S.C. § 9. In contrast to the first interpretation, the second interpretation limits the court's discretion and thereby expands petitioners' discretion by providing an additional method to effect service on nonresident respondents. A purely textual analysis therefore reveals only ambiguity.

An intratextual analysis provides no further answers. Section 9 of the FAA uses "shall" in several inconsistent manners. *See id.* ("If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, . . . . If the adverse party shall be a nonresident . . . ."). Furthermore, both of the alternative interpretations above are consistent with the FAA's related, preceding sentence—the second sentence quoted above—which indicates how service "shall be made" upon a resident respondent. *See* 9 U.S.C. § 9. Under either interpretation of the emphasized "shall," the second quoted

sentence directs how to effect service on a resident defendant. Under the second interpretation of the emphasized "shall," the preceding sentence also makes tacitly clear that the court is under no obligation to grant a motion for United States Marshal's service where the respondent is a resident of the district within which the award was made.

The court therefore turns to the policy underlying the FAA to resolve the ambiguity in meaning. *See United States v. Buckland*, 289 F.3d 558, 565 (9th Cir. 2002) (quoting *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 642 (1990)) ("Where the language is not dispositive, we look to the congressional intent 'revealed in the history and purposes of the statutory scheme.'"). Congress initially enacted the FAA in 1925. 43 Stat. 883-86. Its "purpose was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Grp.*, 460 U.S. 1, 23 (1983) (construing Section 2 of the APA as "a congressional declaration of a liberal federal policy favoring arbitration agreements"). The Supreme Court characterizes Section 9 as the "obviously liberalizing venue provision of the" FAA. *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 192, 200 (2000).

Requiring an FAA petitioner to effect service on nonresident respondents via United States Marshal—rather than by utilizing the menu of otherwise satisfactory options under Federal Rule of Civil Procedure 4—would "frustrate[] the [FAA's] policy of rapid and unobstructed enforcement of arbitration agreements." *Moses H. Cone*, 460

U.S. at 23. On the other hand, requiring the courts to order United States Marshal's service upon request would provide petitioners an option for service over which the court lacks discretion, and thereby combat "longstanding judicial hostility to arbitration agreements." *Gilmer*, 500 U.S. at 24. The second interpretation therefore favors the policy that the Supreme Court has repeatedly ascribed to the congresses that enacted, reenacted, and—over the years—acquiesced in the FAA. Because the FAA can be fairly read to impose a requirement upon the court and the United States Marshal, rather than to constrain the petitioner's options for effecting service, the court concludes that serving a nonresident respondent via process server, in accordance with Rule 4, satisfies Section 9 of the FAA. *See, e.g.*, *VentureForth Holdings LLC v. Joseph*, 80 F. Supp. 3d 147, 148-49 (D.D.C. 2015) (reaching the same conclusion); *Latinamerican Theatrical Grp., LLC v. Swen Int'l Holding*, No. CV 13-1270 CAS (RNBx), 2013 WL 3071057, at 1 n.1 (C.D. Cal. June 18, 2013) (same); *United Cmty. Bank v. Campbell*, No. 1:10cv79, 2011 WL 815684, at *2 (W.D.N.C. Mar. 1, 2011) (same); *Hancor*, 381 F. Supp. 2d at 15-16 (same); *see also Technologists, Inc. v. MIR's Ltd.*, 725 F. Supp. 2d 120, 126-27 (D.D.C. 2010) (interpreting the identical provision in 9 U.S.C. § 12 to require service in accordance with Federal Rule of Civil Procedure 4); *In re Arbitration Between InterCarbon Bermuda, Ltd. & Caltex Trading and Transp. Corp.*, 146 F.R.D. 64, 67 & n.3 (S.D.N.Y. 1993) (same). Amazon has therefore satisfied all of Section 9's requirements, and the court grants Amazon's petition to confirm its arbitration award.

//

//

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Amazon's petition (Dkt. # 1) and CONFIRMS the arbitration award (Dkt. # 2-3). In accordance with the arbitration award, the court AWARDS Amazon $531,733.24 in damages, $7,500.00 in attorney's fees, and $14,825.00 in costs. The court also ENJOINS[1] Arobo and its officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Arobo, from

    (a)    selling products on any of Amazon's websites;

    (b)    opening any Amazon account;

    (c)    accessing Amazon's services in any manner whatsoever; and

    (d)    assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (a) through (c).

Dated this 9th day of August, 2017.

JAMES L. ROBART
United States District Judge

---

[1] Although it differs in format, the injunctive relief the court orders is identical in substance to Judge Finkle's award. (*See* Award at 5.)